IN THE CIRCUIT COURT, FOURTH JUDICIAL CIRCUIT, IN AND FOR DUVAL COUNTY, FLORIDA

CASE NO.: 2018-CA-7168

DIVISION: CV-E

MARY PENELOPE LAKOSKEY,
AMOS LOVETT,

    PLAINTIFFS,

vs.

BONIFACIO T. FLORO, individually;
HEATHER WALSH-HANEY, individually;
MARGARITA ARRUZA, individually;
VALERIE J. RAO, individually;
OFFICE OF THE MEDICAL EXAMINER
FOR DISTRICT FOUR;

    DEFENDANTS.

## COMPLAINT AND DEMAND FOR JURY TRIAL

PLAINTIFFS bring this action seeking compensatory damages and alleges the following:

1. This is an action brought pursuant to 42 U.S.C. § 1983 and Florida law. The Defendants in this case unlawfully withheld the remains of Tina Lovett for personal, educational, and research use without providing notice or seeking permission to do so from her next of kin.

### JURISDICTION AND VENUE

2. Jurisdiction in this court is proper, pursuant to § 26.012(2)(a) Fla. Stat., because PLAINTIFFS seek damages in excess of $15,000.

3. Venue in this court is proper pursuant to §47.011 Fla. Stat., because the cause of action arose in this district.

**PARTIES**

4. Plaintiff, Mary Penny Lakoskey is a citizen of the United States and a resident of Minnesota. She is the mother and legal next-of-kin of Tina Lovett.

5. Plaintiff, Amos Lovett is a citizen of the United States and a resident of Minnesota. He is the brother of Tina Lovett.

6. Defendant Dr. Bonifacio T. FLORO was the Medical Examiner for District Four, located in Jacksonville during the period between May 1984 and January 1992. At all times relevant, Defendant FLORO acted under color of state law.

7. Defendant Dr. Heather WALSH HANEY was, on or about May 2005 employed as a graduate student and laboratory manager at the University of Florida C.A. Pound Human Identification Laboratory located in Gainesville, Florida. On or about August 2005, Defendant Dr. Heather WALSH HANEY was employed by Florida Gulf Coast University an associate professor. At all times relevant, Defendant WALSH HANEY acted under color of state law.

8. Defendant Dr. Margarita ARRUZA was the Medical Examiner for District Four, located in Jacksonville, Florida on or about the period from May 2000 to August 2005. At all times relevant, Defendant ARRUZA acted under color of state law.

9. Defendant Dr. Valerie J. RAO, was the Medical Examiner for District Four, located in Jacksonville, Florida on or about May 2016 through August 2017. At all times relevant, Defendant RAO acted under color of state law.

10. Defendant the OFFICE OF THE MEDICAL EXAMINER FOR DISTRICT FOUR is an agency of the State of Florida created by the Medical Examiner's Commission

within the Department of Law Enforcement, pursuant to Chapter 406 Florida Statutes (also known as "The Medical Examiner's Act) and is located in Jacksonville, Florida.

## FACTUAL ALLEGATIONS

11. On April 21, 1984, Tina Lovett went missing from home in Jacksonville, Florida where she was living with her mother and brother.

12. On May 8, 1984, a law enforcement officer discovered Ms. Lovett's remains at the end of an unnamed dirt road in Jacksonville, Florida. The officer found her lying face down and naked in an area used as a dumping ground for dead animals, junked cars, and other refuse. Her body was found in a highly decomposed state.

13. At the time of her death, Ms. Lovett was seventeen years old.

14. When Plaintiff LAKOSKEY learned of her young daughter's death, the shock of the news caused her to suffer a mental breakdown and she was hospitalized in St. Vincent's Medical Center in Jacksonville, Florida.

15. Due to the suspicious nature of her death, the Jacksonville Sheriff's Office transferred Ms. Lovett's remains to the OFFICE OF THE MEDICAL EXAMINER FOR DISTRICT FOUR, located in Jacksonville, Florida.

16. While at the medical examiner's office, Ms. Lovett's remains were placed in the custody of Defendant Dr. Bonafacio T. FLORO, who was the Medical Examiner for District Four at the time.

17. Defendant FLORO ruled Ms. Lovett's death a homicide, but he was unable to determine the exact cause of death due to the decomposed state of her remains.

18. On May 11, 1984, Plaintiff LAKOSKEY signed a release authorizing the medical examiner, upon conclusion of his duties with respect to the body of Ms. Lovett, to release Ms. Lovett's remains to the Alternate Interment Funeral Home, located in Jacksonville, Florida.

19. On or about that date, Defendant FLORO released some of Ms. Lovett's remains—consisting of the bones of her legs and feet—to the Alternate Interment Funeral Home.

20. Defendant FLORO retained the majority of Ms. Lovett's remains at the MEDICAL EXAMINER'S OFFICE FOR DISTRICT FOUR. These remains included Ms. Lovett's ribcage, femur, and skull.

21. At no point in time did Defendant FLORO or any other employee of the MEDICAL EXAMINER'S OFFICE FOR DISTRICT FOUR inform PLAINTIFFS that they were retaining part of Ms. Lovett's remains, nor did they obtain permission from any of the decedent's family members to do so.

22. On May 14, 1984, the Lovett family held a funeral for Ms. Lovett. Ms. Lovett's friends and family attended the funeral and her high school dismissed classes early that day so that Ms. Lovett's schoolmates could also attend. Following the service, the Lovett family interred what they believed to be all of Ms. Lovett's remains.

23. While the Lovetts were grieving the death of their daughter, the Jacksonville Sheriff's Office identified a vehicle belonging to Thomas Alan Dixon at the scene of the crime.

24. When officers questioned Mr. Dixon, he provided a false alibi, which prompted the Jacksonville Sheriff's Office to arrest him and charge him with the murder of Ms. Lovett.

25. On May 15, 1984, the Circuit Court for the Fourth Judicial Circuit in and for Duval County Florida dismissed the criminal charges against Mr. Dixon for lack of evidence establishing probable cause. Mr. Dixon was released from jail two days later.

26. Mr. Dixon was the only suspect in Ms. Lovett's murder.

27. The Florida Rules of Criminal Procedure provide that "every person shall be brought to trial within 90 days of arrest if the crime charged is a misdemeanor, or within 175 days of arrest if the crime charged." Fla. R. Crim. P. Rule 3.181(a) (1984). Thus, after November 6, 1984 any prosecution for Ms. Lovett's murder was, for all practical purposes[1], impossible.

28. From May 11, 1984 until January 10, 1992, Defendant FLORO retained possession of Ms. Lovett's uninterred remains.

29. On January 10, 1992, Defendant FLORO released Ms. Lovett's uninterred remains to the C.A. Pound Laboratory at the University of Florida.

30. Providing these remains to the University of Florida did not further any law enforcement goals, because there was no investigation or prosecution for Ms. Lovett's murder at that time. Furthermore, The Medical Examiner's Act prohibits such institutions from receiving remains for such purposes. Specifically, § 406.59 Fla Stat. states that "Human remains received by [a] university, school, college, teaching hospital, or other institution may not be used for any purpose other than medical education or research."

31. As such, Ms. Lovett's remains were provided to the University of Florida for medical education, research, or for some other non-law enforcement related purpose—without the permission of Ms. Lovett's legal next of kin.

32. On March 6, 1992, Dr. William R. Maples, on behalf of the University of Florida, submitted a report of osteological examination to Defendant FLORO based on his examination

---

[1] At that time, Rule 3.181 afforded defendants who had not been tried within the speedy trial window the remedy of permanent discharge. On November 29, 1984, the Florida Supreme Court adopted an amendment to the rule that allowed the State to try a felony charge within ten days if a petition for discharge was filed. *The Florida Bar re: Amendment to Rules-Criminal Procedure*, 462 So.2d 386 (Fla. 1985). This amendment went into effect on January 1, 1985—after Mr. Dixon's speedy trial window had run. *Id.* at 386.

5

of Ms. Lovett's uninterred remains. Such identification was not necessary for any law enforcement purpose, because the remains had already been identified by Plaintiff LAKOSKEY as belonging to Ms. Lovett.

33. On May 28, 1998, the Florida Legislature passed an Amendment to the Medical Examiner's Act to more explicitly provide the legal-next of kin of deceased individuals greater rights to notice and control of a decedent's remains. Specifically, the amendment provided:

> A medical examiner may not retain or furnish any body part of the deceased for research or any other purpose which is not in conjunction with a determination of the identification of or cause or manner of death of the deceased or the presence of disease or which is not otherwise authorized by this chapter . . . without notification of and approval by next of kin.

Laws of Fla. Ch. 98-253 (C.H.SB 1329) *codified at* § 406.11(b) Fla. Stat. (1998)

34. From March 6, 1992 until May 12, 2000, Ms. Lovett's uninterred remains were stored at the C.A. Pound Laboratory at the University of Florida

35. At no point in time did, or any employee of the University of Florida provide notice or seek permission from PLAINTIFFS or any other member of Ms. Lovett's family to retain Ms. Lovett's remains for over eight years.

36. On May 12, 2000 Defendant Dr. Heather WALSH HANEY, while working for the University of Florida, released Ms. Lovett's uninterred remains back to the MEDICAL EXAMNER'S OFFICE FOR DISTRICT FOUR.

37. Defendant Dr. Margarita ARRUZA, who at that time was the Medical Examiner for District Four, received Ms. Lovett's remains from Defendant WALSH HANEY.

38. The OFFICE OF THE MEDICAL EXAMINER FOR DISTRICT FOUR retained possession of Ms. Lovett's remains from May 12, 2000 until August 4, 2005.

39. At no point in time did Defendant ARRUZA, or any other employee of the OFFICE OF THE MEDICAL EXAMINER FOR DISTRICT FOUR, provide notice or obtain permission from PLAINTIFFS or any other member of Ms. Lovett's family to retain Ms. Lovett's remains for over five years.

40. On August 4, 2005, Defendant ARRUZA transferred Ms. Lovett's uninterred remains back to Defendant WALSH HANEY, who at that time was employed by Florida Gulf Coast University as an associate professor.

41. Defendant WALSH HANEY accepted the remains pursuant to her employment at FLORIDA GULF COAST UNIVERSITY.

42. When Defendant WALSH HANEY received the remains, there was no ongoing investigation or prosecution for Ms. Lovett's murder. As such, there was no lawful reason for Defendant WALSH HANEY to retain Ms. Lovett's remains.

43. Defendant WALSH HANEY retained custody of Ms. Lovett's uninterred remains from August 4, 2005 until July 20, 2016.[2]

44. In October 2007, two of Defendant WALSH HANEY's graduate students at Florida Gulf Coast University were assisting in identifying remains to prepare them for shipment to the University of North Texas for DNA tests. During their work they came across boxes of the *identified* remains of two homicide victims from Jacksonville, Florida—Frankie DeAngelo Dennard and Jeffrey Ivan Gwyn Jr.—in Defendant WALSH HANEY's custody.

45. When the two students reported concerns to Florida Gulf Coast University that DEFENDANT WALSH HANEY had been keeping identified remains of homicide victims and

---

[2] While there is no indication in documents recording the transfer of Ms. Lovett's remains that the remains were stored anywhere other than Florida Gulf Coast University, Defendant WALSH HANEY later asserted that she stored the remains at Medical Examiner's Office located in Naples, Florida.

7

that there was no paperwork indicating that the remains had been donated by the families or that the families were even aware that the remains were being kept, the university did not take any action.

46. The students' report prompted the Florida Department of Law Enforcement to investigate Defendant WALSH HANEY.

47. The investigation uncovered the remains of two individuals whose bodies were being held by Defendant WALSH HANEY without authorization. The first case, Defendant WALSH HANEY had identified a cranium, mandible, cervical, thoracic, and lumbar vertebrate. Rather than return the remains to law enforcement upon completion of her report, Defendant WALSH HANEY stated that "these remains will be curated within the HWH skeletal collection at the Florida Gulf Coast University."

48. In the second case DEFENDANT WALSH HANEY retained a human cranium and mandible that was stored in a cast-iron pot, purportedly as part of a Palo Mayombe religious shrine. After identifying the remains, Defendant WALSH HANEY retained them in her personal collection and falsely stated in her report that "Lee County Sheriff's Office has donated these specimens to me for teaching purposes."

49. Like these other individuals, Ms. Lovett's remains were in the custody of Defendant WALSH HANEY even though they had already been identified.

50. Defendant WALSH HANEY storing Ms. Lovett's remains served no law enforcement purpose, and on information and belief these remains were among those Defendant WALSH HANEY had curated for her "private collection" for "teaching purposes."

51. At no point in time did Defendant WALSH HANEY provide notice or obtain permission from PLAINTIFFS or any other member of Ms. Lovett's family to maintain possession of Ms. Lovett's remains for almost eleven years.

52. On July 20, 2016, Defendant WALSH HANEY returned Ms. Lovett's uninterred remains to the MEDICAL EXAMINER'S OFFICE FOR DISTRICT FOUR.

53. Ms. Lovett's remains were received by Defendant Dr. Valerie J. RAO, who at the time was the Medical Examiner for District Four.

54. Defendant RAO retained Ms. Lovett's remains from July 20, 2016 until July 19, 2017 without providing notice or receiving permission from PLAINTIFFS or any other member of Ms. Lovett's family.

55. On July 19, 2017, Defendant RAO sent Plaintiff LAKOSKEY a letter to contact the medical examiner's office regarding Ms. Lovett's uninterred remains.

56. Dr. RAO's letter was the first time that PLAINTIFFS or any other member of Ms. Lovett's family were informed that the medical examiner had retained part of Ms. Lovett's remains.

57. Dr. RAO released Ms. Lovett's uninterred remains to Eternity Funeral Home, located in Jacksonville, Florida.

58. On August 31, 2018, PLAINTIFFS observed as Eternity Funeral home disinterred the remains of Ms. Lovett from her grave and brought her casket to the funeral home. Ms. Lovett's casket was in poor condition and showed signs of major rust and corrosion due to the long period of time that had passed since her initial burial.

59. PLAINTIFFS witnessed the employees of Eternity Funeral Home remove Ms. Lovett's partial remains along with a white stuffed animal cat and place them in a new casket along with the remains that the medical examiner's office had withheld.

60. The disinterment process is one that often causes severe and mental physical distress for those who witness it and are not accustomed to such procedures.

61. However, PLAINTIFFS and their family chose to observe these proceedings because of their religious beliefs and out of love and solidarity for her deceased daughter. PLAINTIFFS and their family also held a second funeral for Ms. Lovett to bury the new casket and additional remains.

62. Because the Medical Examiner, University of Florida, Florida Gulf Coast University, as well their employees retained Ms. Lovett's skull and upper body for thirty-three years without telling PLAINTIFFS or obtaining their permission, PLAINTIFFS laid to rest their young, murdered daughter and sister a second time; experience which opened deep psychological wounds that had been closing for over three decades.

### COUNT I- DEPRIVATION OF PLAINTIFFS' PROPERTY WITHOUT DUE PROCESS OF LAW
(Dr. Bonafacio T. Floro)

63. PLAINTIFFS reallege and incorporate by reference paragraphs 1 through 62 above.

64. Defendant FLORO took possession of Tina Lovett's body to perform an examination in accordance with the practice and procedure of investigating suspicious deaths.

65. Florida law conferred a property interest for PLAINTIFFS, as Tina Lovett's legal next of kin, in the remains of their daughter and sister, respectively. *See Crocker v. Pleasant*, 778 So.2d 978 (Fla. 2001); *Williams v. City of Minneola*, 575 So. 2d 683 (Fla. 5th DCA 1991).

10

66. Defendant FLORO deprived PLAINTIFFS of that property interest by retaining possession of Ms. Lovett's remains without providing notice to PLAINTIFFS, or obtaining the permission of PLAINTIFFS, when doing so served no lawful purpose.

67. Defendant FLORO deprived PLAINTIFFS of their property interest in Ms. Lovett's remains without due process of law, which is actionable pursuant to 42 U.S.C §1983.

68. As a result of Defendant FLORO's conduct, PLAINTIFFS suffered damages including expenses incurred in attending the disinterment of Ms. Lovett's remains and burying her a second time, and severe mental pain and suffering.

WHEREFORE, Plaintiffs Mary LAKOSKEY and Amos LOVETT demand judgment against Defendant FLORO for:

(a) actual and compensatory damages

(b) punitive damages

(c) reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988

(d) any other relief this Court deems just and proper.

### COUNT II- DEPRIVATION OF PLAINTIFFS' PROPERTY WITHOUT DUE PROCESS OF LAW
(Dr. Heather Walsh Haney)

69. PLAINTIFFS reallege and incorporate by reference paragraphs 1 through 62 above.

70. Defendant WALSH HANEY took possession of Tina Lovett's remains on behalf of the University of Florida and furnished them to the medical examiner for district four. She subsequently took possession of Tina Lovett from THE MEDICAL EXAMINER FOR DISTRICT FOUR on behalf of Florida Gulf Coast University.

71. Florida law conferred a property interest for PLAINTIFFS, as Tina Lovett's legal

next of kin, in the remains of their daughter and sister, respectively. *See Crocker v. Pleasant*, 778 So.2d 978 (Fla. 2001); *Williams v. City of Minneola*, 575 So. 2d 683 (Fla. 5th DCA 1991).

72. Defendant HANEY deprived PLAINTIFFS of that property interest by retaining possession of Ms. Lovett's remains without providing notice to PLAINTIFFS, or obtaining the permission of PLAINTIFFS, when doing so served no lawful purpose.

73. Defendant HANEY deprived PLAINTIFFS of their property interest in Ms. Lovett's remains without due process of law, which is actionable pursuant to 42 U.S.C §1983.

74. As a result of Defendant HANEY's conduct, PLAINTIFFS suffered damages including expenses incurred in attending the disinterment of Ms. Lovett's remains and burying her a second time, and severe mental pain and suffering.

WHEREFORE, Plaintiffs Mary LAKOSKEY and Amos LOVETT demand judgment against Defendant WALSH HANEY for:

(a) actual and compensatory damages

(b) punitive damages

(c) reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988

(d) any other relief this Court deems just and proper.

### COUNT III- DEPRIVATION OF PLAINTIFFS' PROPERTY WITHOUT DUE PROCESS OF LAW
(Dr. Margarita Arruza)

75. PLAINTIFFS reallege and incorporate by reference paragraphs 1 through 62 above.

76. Defendant ARRUZA took possession of Tina Lovett's remains from the University of Florida on behalf of the OFFICE OF THE MEDICAL EXAMINER FOR DISTRICT FOUR.

12

77. Florida law conferred a property interest for PLAINTIFFS, as Tina Lovett's legal next of kin, in the remains of their daughter and sister, respectively. *See Crocker v. Pleasant*, 778 So.2d 978 (Fla. 2001); *Williams v. City of Minneola*, 575 So. 2d 683 (Fla. 5th DCA 1991).

78. Defendant ARRUZA deprived PLAINTIFFS of that property interest by retaining possession of Ms. Lovett's remains without providing notice to PLAINTIFFS, or obtaining the permission of PLAINTIFFS, when doing so served no lawful purpose.

79. Defendant ARRUZA deprived PLAINTIFFS of their property interest in Ms. Lovett's remains without due process of law, which is actionable pursuant to 42 U.S.C §1983.

80. As a result of Defendant ARRUZA's conduct, PLAINTIFFS suffered damages including expenses incurred in attending the disinterment of Ms. Lovett's remains and burying her a second time, and severe mental pain and suffering.

WHEREFORE, Plaintiffs Mary LAKOSKEY and Amos LOVETT demand judgment against Defendant ARRUZA for:

(a) actual and compensatory damages

(b) punitive damages

(c) reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988

(d) any other relief this Court deems just and proper.

### COUNT IV- DEPRIVATION OF PLAINTIFFS' PROPERTY WITHOUT DUE PROCESS OF LAW
(Dr. Valerie J. Rao)

81. PLAINTIFFS reallege and incorporate by reference paragraphs 1 through 62 above.

82. Defendant RAO took possession of Tina Lovett's remains from Florida Gulf Coast University on behalf of the OFFICE OF THE MEDICAL EXAMINER FOR DISTRICT

13

FOUR.

83. Florida law conferred a property interest for PLAINTIFFS, as Tina Lovett's legal next of kin, in the remains of their daughter and sister, respectively. *See Crocker v. Pleasant*, 778 So.2d 978 (Fla. 2001); *Williams v. City of Minneola*, 575 So. 2d 683 (Fla. 5th DCA 1991).

84. Defendant RAO deprived PLAINTIFFS of that property interest by retaining possession of Ms. Lovett's remains without providing notice to PLAINTIFFS, or obtaining the permission of PLAINTIFFS, when doing so served no lawful purpose.

85. Defendant RAO deprived PLAINTIFFS of their property interest in Ms. Lovett's remains without due process of law, which is actionable pursuant to 42 U.S.C §1983.

86. As a result of Defendant RAO's conduct, PLAINTIFFS suffered damages including expenses incurred in attending the disinterment of Ms. Lovett's remains and burying her a second time, and severe mental pain and suffering.

WHEREFORE, Plaintiffs Mary LAKOSKEY and Amos LOVETT demand judgment against Defendant RAO for:

(a) actual and compensatory damages

(b) punitive damages

(c) reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988

(d) any other relief this Court deems just and proper.

### COUNT V-DEPRIVATION OF PLAINTIFFS' PROPERY WITHOUT DUE PROCESS OF LAW
(Office of the Medical Examiner for District Four)

87. PLAINTIFFS reallege and incorporate by reference paragraphs 1 through 62 above.

88. Employees of the OFFICE OF THE MEDICAL EXAMINER DISTRICT FOUR took possession of Ms. Lovett's uninterred remains and loaned them to the University of Florida and Florida Gulf Coast University.

89. Florida law conferred a property interest for PLAINTIFFS, as Tina Lovett's legal next of kin, in the remains of their daughter and sister, respectively. *See Crocker v. Pleasant*, 778 So.2d 978 (Fla. 2001); *Williams v. City of Minneola*, 575 So. 2d 683 (Fla. 5th DCA 1991).

90. Defendant FLORO deprived PLAINTIFFS of that property interest by retaining possession of Ms. Lovett's remains without providing notice to PLAINTIFFS, or obtaining the permission of PLAINTIFFS, when doing so served no lawful purpose.

91. Defendant FLORO deprived PLAINTIFFS of their property interest in Ms. Lovett's remains without due process of law, which is actionable pursuant to 42 U.S.C §1983.

92. Defendant's FLORO, ARRUZA, and RAO were appointed to serve as the medical examiner for district four and constituted final decisionmakers for the medical examiner's office regarding the retention and return of remains.

93. Alternatively, Defendants FLORO, ARRUZA, and RAO's decisions as it pertained to the retention and return of remains and their decisions were not effectively and immediately reviewable by any other individual.

94. As a result of these employees' conduct, PLAINTIFFS suffered damages including expenses incurred in attending the disinterment of Ms. Lovett's remains and burying her a second time, and severe mental pain and suffering.

WHEREFORE, Plaintiffs Mary LAKOSKEY and Amos LOVETT demand judgment against Defendant THE OFFICE OF THE MEDICAL EXMAINER FOR DISTRICT FOUR for:

(a) actual and compensatory damages

15

(b)   reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988

(c)   any other relief this Court deems just and proper.

### COUNT VI- OUTRAGEOUS INFLICTION OF EMOTIONAL DISTRESS
### (Dr. Bonaficio Floro)

95.   PLAINTIFFS reallege and incorporate by reference paragraphs 1 through 62 above.

96.   Defendant FLORO outrageously or recklessly maintained the majority of Ms. Lovett's remains in his possession.

97.   Defendant FLORO further outrageously or recklessly misrepresented to PLAINTIFFS that all of Ms. Lovett's remains were being returned to PLAINTIFFS, when in fact he retained most of Ms. Lovett's remains.

98.   Defendant FLORO further outrageously or recklessly relinquished Ms. Lovett's remains to the University of Florida without giving notice or obtaining permission from Ms. Lovett's family, when doing so served no lawful purpose.

99.   These acts were outrageous and went beyond all bounds of decency and would be regarded as odious and utterly intolerable in a civilized community.

100.  These acts caused PLAINTIFFS severe emotional distress.

101.  As a result of Defendant FLORO's conduct, PLAINTIFFS suffered damages including expenses incurred in attending the disinterment of Ms. Lovett's remains and burying her a second time, and severe mental pain and suffering.

WHEREFORE, Plaintiffs Mary LAKOSKEY and Amos LOVETT demand judgment against Defendant FLORO for:

(a)   actual and compensatory damages

    (b)    punitive damages

    (c)    any other relief this Court deems just and proper

### COUNT VII- OUTRAGEOUS INFLICTION OF EMOTIONAL DISTRESS
### (Dr. Margarita Arruza)

102. PLAINTIFFS reallege and incorporate by reference paragraphs 1 through 62 above.

103. Defendant ARRUZA outrageously or recklessly retained Ms. Lovett's uninterred remains at the Medical Examiner's Office for District Four without giving notice or obtaining permission to do so from Ms. Lovett's family, when doing so served no lawful purpose.

104. Defendant ARRUZA further outrageously or recklessly relinquished Ms. Lovett's remains to the Florida Gulf Coast University without giving notice or obtaining permission from Ms. Lovett's family, when doing so served no lawful purpose and was explicitly proscribed by Florida law.

105. These acts were outrageous and went beyond all bounds of decency and would be regarded as odious and utterly intolerable in a civilized community.

106. These acts caused PLAINTIFFS severe emotional distress.

107. As a result of Defendant ARRUZA's conduct, PLAINTIFFS suffered damages including expenses incurred in attending the disinterment of Ms. Lovett's remains and burying her a second time, and severe mental pain and suffering.

WHEREFORE, Plaintiffs Mary LAKOSKET and Amos LOVETT demand judgment against Defendant ARRUZA for:

    (a)    actual and compensatory damages

    (b)    punitive damages

    (c)    any other relief this Court deems just and proper.

## COUNT VIII- OUTRAGEOUS INFLICTION OF EMOTIONAL DISTRESS
### (Dr. Valerie Rao)

108. PLAINTIFFS reallege and incorporate by reference paragraphs 1 through 62 above.

109. Defendant RAO outrageously or recklessly retained Ms. Lovett's uninterred remains in her possession at the medical examiner's office for almost a year without providing notice or obtaining permission from Ms. Lovett's family, when doing so served no lawful purpose and was explicitly proscribed by Florida law.

110. Defendant RAO further outrageously or recklessly relinquished Ms. Lovett's remains to Florida Gulf Coast University without giving notice or obtaining permission from Ms. Lovett's family, when doing so served no law enforcement purpose and was explicitly proscribed by Florida law.

111. These acts were outrageous and went beyond all bounds of decency and would be regarded as odious and utterly intolerable in a civilized community.

112. These acts caused PLAINTIFFS severe emotional distress.

113. As a result of Defendant RAO's conduct, PLAINTIFFS suffered damages including expenses incurred in attending the disinterment of Ms. Lovett's remains and burying her a second time, and severe mental pain and suffering.

WHEREFORE, Plaintiffs Mary LAKOSKEY and Amos LOVETT demand judgment against Defendant RAO for:

(a) actual and compensatory damages

(b) punitive damages

(c) any other relief this Court deems just and proper.

## COUNT IX- OUTRAGEOUS INFLICTION OF EMOTIONAL DISTRESS
(Dr. Heather Walsh Haney)

114.   PLAINTIFFS reallege and incorporate by reference paragraphs 1 through 62 above.

115.   Defendant WALSH HANEY outrageously or recklessly retained Ms. Lovett's uninterred remains on behalf of Florida Gulf Coast University for almost eleven years without giving notice or obtaining permission to do so from Ms. Lovett's family, when doing so served no lawful purpose.

116.   These acts were outrageous and went beyond all bounds of decency and would be regarded as odious and utterly intolerable in a civilized community.

117.   These acts caused PLAINTIFFS severe emotional distress.

118.   As a result of Defendant HANEY'S conduct, PLAINTIFFS suffered damages including expenses incurred in attending the disinterment of Ms. Lovett's remains and burying her a second time, and severe mental pain and suffering.

WHEREFORE, Plaintiffs Mary LAKOSKEY and Amos LOVETT demand judgment against Defendant WALSH HANEY for:

(a)   actual and compensatory damages

(b)   punitive damages

(c)   any other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial before a jury on all issues so triable.

DATED this 17th day of October 2018.

Respectfully submitted,

/s/ Wm. J. Sheppard
Wm. J. Sheppard, Esquire
Florida Bar No.: 109154
Elizabeth L. White, Esquire
Florida Bar No.: 314560
Matthew R. Kachergus, Esquire
Florida Bar No.: 503282
Bryan E. DeMaggio, Esquire
Florida Bar No.: 55712
Jesse B. Wilkison, Esquire
Florida Bar No.: 118505
Camille E. Sheppard, Esquire
Florida Bar No.: 124518
Sheppard, White, Kachergus & DeMaggio, P.A.
215 Washington Street
Jacksonville, Florida 32202
Telephone: (904) 356-9661
Facsimile: (904) 356-9667
Email: sheplaw@sheppardwhite.com
CO-COUNSEL FOR PLAINTIFFS

/s/ R. Scott Costantino
R. Scott Costantino, Esquire
Florida Bar No.: 0793280
The Costantino Law Firm, P.A.
6 E. Bay Street, Suite 304
Jacksonville, Florida 32202
Telephone: (904) 355-3023
Facsimile: (904) 355-3026
Email: scott@costantinolawfirm.com
CO-COUNSEL FOR PLAINTIFFS

vl[lakoskey.complaint]